JOHN A. VAN BLARCOM, Survivor, &c., Appellant, *v.* THE BROADWAY BANK, Respondent.

*Referee's Report— Question of Fact—Presumption.*

When the question determined by the referee is one of fact, the opinion of the referee putting a false construction upon the testimony of a witness respecting such fact does not change the question from one of fact to law; and as the judgment of the General Term, reversing the judgment upon the finding of the referee, does not state that it reversed upon an error of fact, it must be assumed that the reversal was upon an error in law.

THE action was brought to recover the proceeds of certain stocks formerly belonging to one Christopher Champlin, who, with his partner, one Wood, made an assignment to Plaintiff, Van Blarcom, and Oliver J. Hays, who died since the commencement of this action. The stocks were held as collateral security for liabilities of Champlin to the Defendant, and were in its possession.

The Defendant sold these stocks, under the pledge to the Defendant, with the knowledge and assent of the assignees, and the Plaintiffs claimed to recover the surplus of the proceeds of sale, after satisfying the debts of Champlin, for which they had been pledged. The Plaintiffs also claimed that they were only pledged for certain loans made to Champlin—one of $4,000, one of $5,000, and one of $850—for which the stocks were deposited as collateral, according to the several written obligations by which these debts were contracted and the stocks specifically pledged, and which the proof established.

The Defendant insisted that they were also pledged as security for a demand loan of $2,750, secured by Champlin's note, and a deposit of the note of the firm of Roberton & Dustan for $3,000 as collateral; a note of Roberton & Dustan for $3,000, payable three months from date, and yet running at the time of the assignment, endorsed by Champlin, and which had been discounted for him.

Another note of Roberton & Dustan, of $2,500, at three months, of the same character as the last above mentioned.

Also for a draft of $3,000 drawn by Champlin on Wood, of Paducah, Kentucky, which the Defendant had discounted, and an overdraft of $1,835.

The Defendant also claimed the right to set off all of the foregoing demands as against the assignees of Champlin. The cause was referred, by an order of the Superior Court of New York, in which the action was brought, to a referee. It appeared upon the trial that the liabilities hereinbefore mentioned were pending on the 27th of February, 1857, when Champlin applied to the Defendant to have the proceeds of the $3,000 draft, which was then unaccepted, and had previously been deposited for collection, passed to his credit as discount.

The President, Mr. Palmer, declined to do this, as it was one-name paper, unless the bank had collateral security.

A conversation was had between Champlin and Palmer, and upon what then took place depends the additional pledge beyond the hypothecation of the stocks previously made.

The referee based his decision mainly upon what occurred at this time, and found that the following conversation took place between said Champlin and Francis A. Palmer, the President of the Defendant, and acting on their behalf, and which conversation constituted a contract between the Defendant and the said Champlin. Said Champlin inquired of said Palmer if the Broadway Bank had heard anything of the draft on C. E. D. Wood, lastly hereinbefore described; said Palmer answered, "No." Champlin then said: "I must have the proceeds of that draft to-day, or I shall go to protest for the first time." He then said: "You hold all my stocks; they are security for my *discounts* and this draft." Palmer then replied, "If that is so, we will put the proceeds of the draft to your credit."

And the Defendant did thereupon advance to, and put to the credit of the said Champlin, the proceeds of said draft, to wit, the amount thereof, less the discount.

There was some evidence as to interviews between the assignees

and the officers of the bank in reference to the nature of the pledge, and some conflict between the testimony of Champlin and Palmer as to the conversation in the bank, and the alleged pledge of the stocks; and according to Champlin's version, no additional pledge of the stocks was then made.

It also appeared that the assignment was made on the sixth day of March, 1857, before two of the notes of Roberton & Dustan were due, and provided for the payment of the partnership debts first, and embraced the stocks in question; and that the stocks were sold by the Defendant, and the sum of $23,800.16 was realized, after the assignment was executed.

The referee found, as a matter of law, that there was no issue under the pleadings as to the title of the Plaintiffs to the stocks in question, subject to any valid hypothecations thereof by Champlin or the Plaintiffs. That by the agreement made between Christopher Champlin and the Defendant, on the 27th of February, A.D. 1857, said Champlin made a *further pledge* to the Defendant of the stocks then in its hands, to secure the payment of the draft *drawn by him* on C. E. D. Wood, for $3,000. That the Defendant was entitled to be paid the loans made to Champlin, for which the stocks were pledged by a writing, the draft of $3,000, and a loan of $3,000 made to the Plaintiffs after the assignment, and reported a balance in favor of the Plaintiffs of $8,759.61. Various exceptions were taken to the decisions of the referee upon the trial, and to his report, all of which, so far as material, are noticed in the opinion.

A judgment was entered upon the referee's report, and the Defendant appealed to the General Term of the Superior Court of the city of New York, and a new trial was ordered.

The Plaintiffs, having made and filed the proper stipulation, appealed to the Court of Appeals.

*William M. Evarts* for Appellant.
*Everett P. Wheeler* for Respondent.

MILLER, J.—I think that it must be assumed in this case that the assignment made by Champlin and Wood was a valid transfer

of Champlin's property, as between him and the assignors, and that the Plaintiffs were entitled to maintain this action, even if it be conceded that the validity of such an assignment might be questioned by the creditors who were in a position to contest it in an action brought for that purpose.

By the assignment, the title to the stocks passed and became vested in the Plaintiffs; and the Defendant was liable to account to the Plaintiffs the same as it would to Champlin, their assignor, prior to the time when the assignment was actually made and executed. In the subsequent sale and disposition of the stocks, the Defendant acted by virtue of the authority, and with the assent of the Plaintiffs, and as their bailee.

The accountability of the Defendant was in no respect changed thereby, and the Defendant had only a right to claim, as a charge against the proceeds arising upon the sale of the stocks, such amount as would have been necessary for the Plaintiffs to have tendered on the day of the assignment, with interest and expenses, to cancel, pay up, and discharge the claim of the Defendant, as the pledgee of the stocks, and not beyond that sum. The stocks being thus pledged for a specific and particular purpose by the assignors, precludes the idea of a set-off as against the assignees, and no such question arises. If any legal set-off had existed, independent of the pledge of the stocks, it would only be valid against moneys realized upon their sale; and when they were sold, the title to the moneys had passed to the Plaintiffs; and the claim of the Defendant was against the Plaintiff's assignors. At the time of the assignment, no debt was due from the bank to Champlin, and it never became a debtor of Champlin. The debt was due from the Defendant to the Plaintiffs, and was never due to their assignors; and to the Plaintiffs alone was the Defendant liable to account.

The question arises, and it is the principal question to be determined in this case, what was the extent of the pledge of the stocks made by Champlin, the Plaintiff's assignor, to the Defendant?

The referee has found that, by the agreement between Cham-

plin and the Defendant, made on the 27th of February, 1857, Champlin made a further pledge of the stocks in the Defendant's hands, to secure the payment of the draft of $3,000. It was entirely competent for the referee to determine, as a matter of fact, from all the evidence in the case, what further pledge, if any, was made of the stocks in question; and as the judgment of reversal does not state that the reversal was made upon questions of fact, it must not be deemed to have been reversed on questions of fact (Code, §§ 272, 268). We must, therefore, consider the decision of the General Term, reversing the judgment of the referee, as involving a question of law alone.

Regarding the finding of the referee in that aspect, I think it was not erroneous, and that it cannot be considered as error in law that the further pledge only included the $3,000 draft, unless he has found some fact inconsistent with the pledge found to have been thus made. This has not been done, and therefore the judgment of the referee could not be reversed upon any such ground.

It is not important to examine the question of fact presented to the referee on the trial; but, looking at the evidence in the most favorable light in which it can be regarded for the Defendant, there was not, in my opinion, sufficient testimony to establish a pledge of the stocks for any amount, on the 27th of February, beyond the $3,000 draft. They had been previously hypothecated, by written instruments, for particular loans, which were specified; and any pledge of the stocks for other loans, except the draft for $3,000, was not specifically made at the time last mentioned. The conversation between Champlin and the president of the bank does not specifically refer to any prior loans; and as all the other liabilities of Champlin were secured, I think the remark of Champlin, that the stocks were security for his discounts and the draft, had reference to the loans for which they were hypothecated, and not to those which were otherwise secured, as well as to the draft then discounted. He evidently meant to refer to loans for which they were pledged,

and not to those which they did not cover.   These embraced several notes, and did not include the loans made by the Defendant upon the paper of Roberton & Dustan.   Nor is it manifest that it was intended to embrace the latter, from anything which passed between the parties at that time.   It may also be remarked, that Champlin only desired at this time a discount of the Paducah draft; and it would have been somewhat remarkable if he had offered to pledge the stocks for other papers, without being requested to do so, when it was not claimed that such paper was not already secured to the Defendant, and when no additional security was demanded.   It would have been more singular and strange to have made such a pledge, as the only objection made to the proposition to discount the draft in question was, that it was the rule of the bank not to take paper with a single name without collateral.   This striking fact renders it quite clear that no objection was made to the discount on account of the other paper, and that the intent of the parties was, that the stocks should be pledged solely and alone as security for the draft. The subsequent interviews between the Plaintiffs and the officers of the bank, tend strongly to sustain the position, that the stocks were not further pledged for anything but the draft.   Although, as already stated, the question does not now arise, yet the facts to which I have adverted tend strongly to sustain the correctness of the referee's conclusion upon the evidence presented upon the trial.

We have to consider the exceptions taken by the Defendant upon the trial to the exclusion of testimony offered by him.   The evidence offered as to the declarations of Champlin prior to the assignment, was to the effect that Champlin then understood and stated that all the notes which Roberton & Dustan had loaned to him, and which had been discounted by the Defendant, were to be paid out of the collaterals held by, and which he had assigned to the Defendant, and that an agreement based upon this statement was made, by which the amount for which Roberton & Dustan were preferred in the assignment was fixed.

Assuming that the declarations of Champlin were competent.

as against the assignees; that they were admissible within the rule of evidence; that they were an admission against his interest at the time when made; that they comprehended a statement of a fact as to the form and effect of the pledge made, and not an opinion of the witness as to the extent and nature of the security; and conceding that these declarations could properly be introduced without first laying the foundation, by calling Champlin's attention to the subject, and were not affected by his subsequent examination as a witness for the Plaintiffs in full on the question of fact at issue,—yet I am of the opinion that in no aspect in which they can be considered does the ruling of the referee, excluding the evidence, furnish occasion for a new trial. As the case was disposed of by the referee, the testimony offered was in no sense material, and could not have affected the result. And even if the declarations of Champlin, and the proof offered, can be considered as of any importance upon the question involved, the evidence was substantially disclosed afterwards upon the cross-examination of the same witness.

As to their materiality, it will be noticed that the referee's finding was put mainly upon the testimony of Palmer, the president of the bank—which was in conflict with Champlin's evidence as to what took place at the time the stocks were pledged—and the construction he put upon Palmer's statement. The referee ignored entirely the version given by Champlin in regard to the transaction, and considered it was insufficient to overcome the force of the distinct and positive statements of Palmer, and accepted the narration of the latter as the precise occurrence. Upon this view of the subject, and upon the basis that Palmer was entirely correct, he decides the case adversely to the Defendant as to a larger portion of the Plaintiff's claim. It is very evident that the evidence offered could have had no influence or weight upon the conclusion of the referee as to the contract between these parties. The declarations of Champlin would have added nothing to the statement of Palmer, which, the referee decided, constituted the basis of the contract; and as no injury would have resulted from their exclusion, there is no good and

sufficient ground for a new trial.  But if the evidence was improperly excluded, I think it was substantially introduced afterwards, and the difficulty entirely obviated by the testimony of the same witness.  The witness testified that he tried to make an estimate of the liabilities of Roberton & Dustan's outstanding before the assignment, and $11,000 was specified, *on the ground he had stated*, and that sum was put in upon the assumption that the firm paid all their notes; that he supposed that he would not have to pay the notes in the Broadway Bank; and it was expected that these notes were to be paid out of the collaterals.

The witness evidently referred to the conversation between him and Champlin, and the grounds stated were what he had previously testified after the offer of testimony was made, and the evidence excluded, and which was, on motion, stricken out, to the effect that Champlin had told him that the Broadway Bank had sufficient collaterals to cover his indebtedness, including the discounted notes of Roberton & Dustan, and that neither the bank nor the firm could lose anything by his liabilities to the Bank. The witness testified afterwards, upon the same cross-examination, that there was an open question about the Broadway Bank collaterals covering all these notes, and that he did not know what the value of these collaterals was, except from Champlin's statement.

It is very evident, I think, that upon comparison, the evidence excluded and that introduced were of the same character; and the evidence introduced covers substantially the same grounds, and was to the same effect, as that embraced in the offer.  In either point of view, it would seem to be a statement of Champlin's views; and if of any importance, it no doubt had its proper weight with the referee in his determination of the case.

The question put to the Defendant's cashier, whether he could have said, with truth, certain things which he denied saying, called for an inference and conclusion of the witness, and, I think, was properly excluded.

The question put to the witness Dustan, " For what indebtedness or liabilities were these collaterals deposited with the Defendant?" was also properly excluded.

The previous examinations showed that the witness had no knowledge in regard to the subject inquired of, and called for his conclusion, and not for facts.

It would be allowing considerable latitude of inquiry to permit a witness to testify generally as to his knowledge of a fact, when the evidence previously given by him had shown that he was not present when the transaction took place. If the witness had any knowledge of particular facts bearing upon the question, his attention should have been called to them, and the facts proved ; but without proof of any knowledge whatever, the question put was not admissible.

The question put to the Defendant's cashier, whether he had stated, in an interview with Van Blarcom, when the notes were discounted for the assignees, anything in regard to the notes held as collateral, does not appear to have been material ; as the question was, whether the witness had made the statement sworn to by Van Blarcom, and he had already denied that he had.

As no right of set-off existed, there was no error in rejecting the claim for a balance of account in favor of the Defendant. There was no such variance, I think, between the assignment set forth in the complaint and the evidence, as could not be disregarded.

Nor was the Plaintiff entitled to the affirmative in summing up the case.

I discover no error in any of the rulings of the referee ; and am satisfied, after a careful examination, that the judgment of the General Term of the Superior Court should be reversed, and that the judgment entered upon the referee's report should be affirmed.

MASON, J.—The question of the extent of the pledge of the stocks in this case was nothing but a question of fact, to be determined by the referee upon a conflict of parol evidence ; and he found the fact against the Defendant as to the three notes which he rejected, and it is not easy for the judicial mind to per-

ceive how the Court below, in reviewing this judgment, could reverse it upon a question of law, on this very ground alone.

·It certainly was a question of fact, depending entirely upon contradictory parol evidence. The fact that the referee, in his opinion, put a certain construction upon the testimony of Mr. Palmer, the president of this bank, while considering this question of fact, does not any the less make his decision of the whole question a question of fact, and not of law. Here was a most palpable error committed by the Court below, in reversing this judgment upon this ground, upon a question of law.

It is true that in determining this question of fact, the referee went into a discussion of the construction which should be put upon certain language employed by Palmer in giving his testimony ; and because he arrived at a different construction from what the Court below did, they seemed to think that they could reverse his finding of the fact itself as a question of law.

As the judgment of reversal does not state that the reversal was made on a question or questions of fact, the Code declares that the judgment " *shall not be deemed to have been reversed on questions of fact ;*" and the consequence is, that this Court cannot review this question of fact under the Code (§§ 272, 268). This judgment, therefore, must be reversed, unless some error in law was committed upon the trial.

I am satisfied, after a careful examination of the exceptions taken to the rulings of the referee upon questions of evidence, that they furnished no grounds for the reversal of the judgment ; and so the Court below must have regarded it.

The various offers to prove what Champlin had said in regard to the nature and extent of this pledge, could not be admitted as primary evidence in this cause ; and as no foundation was laid for the introduction of this evidence for the purpose of impeaching him, it was properly rejected. The Defendant was not in a condition to impeach this assignment, as made to hinder, delay, or defraud creditors; and, besides, no such defence was set up. I am not able to perceive any error committed upon the trial; and advise the reversal of the judgment of the General Term

of the Superior Court, and the affirmance of the judgment entered upon the report of the referee.

All concur.

Judgment accordingly.